UNITED STATES of America, Appellee,

v.

Michael Jonathan BOOZE, Appellant.

No. 96–3025.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 19, 1997.

Decided March 18, 1997.

Rehearing Denied May 15, 1997.

M. Elizabeth Kent, Washington, DC, appointed by the court, argued the cause and filed the briefs for appellant.

Steven E. Rindner, Assistant U.S. Attorney, Washington, DC, argued the cause for appellee, with whom Eric H. Holder, Jr., U.S. Attorney, John R. Fisher, Elizabeth Trosman and William J. O'Malley, Jr., Assistant U.S. Attorneys, were on the brief.

Before: WALD, SENTELLE and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

In *United States v. Anderson,* 39 F.3d 331 (D.C.Cir.1994), *vacated in part on other grounds,* 59 F.3d 1323 (in banc), *cert. denied,* —— U.S. ——, 116 S.Ct. 542, 133 L.Ed.2d 445 (1995), the court recognized that in a conspiracy, "the scope of the jointly undertaken criminal activity, and hence relevant conduct, is not necessarily the same for every participant." *Id.* at 352 (citing United States Sentencing Guidelines ("U.S.S.G.")

§ 1B1.3 n.1 (1990)). The court further noted that "[t]he extent of a defendant's vicarious liability under conspiracy law is always determined by the scope of his agreement with his co-conspirators," and that, accordingly, it is the sentencing court's responsibility to "determine the scope of the conspiratorial agreement each [conspirator] joined." *Id.* (quoting *United States v. Saro,* 24 F.3d 283, 288 (D.C.Cir.1994)). Concluding that the district court erred in adopting the presentence report's recommendation that each defendant should automatically be held accountable for all amounts of cocaine involved in the entire multi-state conspiracy, and that, under *Saro,* 24 F.3d at 288–89, it was "at least 'reasonably likely' " that most members of the conspiracy were accountable for less than the total quantity, the court remanded for resentencing. The court ordered the district court to make "specific, individualized findings regarding the quantity of drugs each appellant might have reasonably foreseen his or her agreed-upon participation would involve." *Anderson,* 39 F.3d at 353. The instant appeal involves one of those remands.

Appellant Michael Booze appeals his resentencing on two grounds: first, that the district court erred in finding that there existed a "Booze brothers conspiracy" as a subset of the greater Anderson conspiracy, and in attributing to him cocaine amounts involved in transactions in which his two brothers were implicated, regardless of whether evidence existed of his personal involvement; and second, that the district court erred in accepting the government's calculation that five and three-eighths kilograms of cocaine were attributable to him under the relevant conduct provisions of U.S.S.G. § 1B1.3. Because the government proffered evidence at trial to support its view of the scope of appellant's conspiratorial agreement and the quantity of drugs attributable him as a result of his participation, and because appellant did not challenge that evidence or object to the adequacy of the district court's findings, we affirm.

**1.** U.S.S.G. § 2D1.1(c)(3) provides for a base offense level of 34 for offenses involving "[a]t least 15 [kilograms] but less than 50 [kilograms] of Cocaine...."

## I.

As part of a 126–count indictment that charged thirty-one defendants with conspiracy and various other offenses relating to drug trafficking, appellant was charged with conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine, and with use of a communication facility in furtherance of the conspiracy. 21 U.S.C. §§ 843(b), 846. He and his two brothers were convicted by a jury of conspiracy based on evidence that they jointly purchased multiple kilograms of cocaine from Anderson for distribution in Annapolis, Maryland. *Anderson,* 39 F.3d at 337.

At appellant's original sentencing, the court applied the Sentencing Guidelines based on an attribution to each defendant of 28.9 kilograms of cocaine, the full amount involved in the Anderson conspiracy. Thus, appellant was assigned a base offense level of 34 under U.S.S.G. § 2D1.1(c)(3)[1] which, in combination with his criminal history category of 6,[2] led to the imposition of a total sentence of 262 months imprisonment and five years of supervised release. On remand, using a base offense level of 32 and a criminal history category of 6 that yielded a sentencing range of 210–262 months, the district court resentenced appellant to 210 months imprisonment and five years supervised release on the conspiracy count, and 48 months imprisonment and one year of supervised release for the communication facility count, the sentences to run concurrently.

## II.

Appellant's principal contention on appeal is that the district court failed to sentence him based upon his individual participation in the Anderson conspiracy and instead focused on "a quasi-fictitious entity termed the 'Booze brothers conspiracy,' " and attributed to appellant several excess kilograms of cocaine associated with transactions involving his brothers in which he played no role.

**2.** *See* U.S.S.G. § 4A1.1.

Under U.S.S.G. § 1B1.3, where more than one potential base level exists for an offense, the base level is to be determined on the basis of:

(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B) in the case of a jointly undertaken criminal activity ( ... whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

U.S.S.G. § 1B1.3(a)(1) (1996).[3] Accordingly, consistent with the remand instructions in *Anderson,* the district court had to ascertain the quantity of drugs that could be attributed to appellant by determining whether the acts at issue were within the scope of the conspiracy in which appellant had agreed to participate, and whether the acts were foreseeable to him. *See United States v. Childress,* 58 F.3d 693, 722 (D.C.Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 825, 133 L.Ed.2d 768 (1996); *United States v. Edmond,* 52 F.3d 1080, 1104–1106 (D.C.Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 539, 133 L.Ed.2d 443 (1995); *Saro,* 24 F.3d at 288–91.

■ The government bears the burden of proving the amount of drugs reasonably foreseeable to the defendant by a preponderance of the evidence. *See United States v. McManus,* 23 F.3d 878, 885 (4th Cir.1994); *United States v. Lam Kwong–Wah,* 966 F.2d 682, 685–86 (D.C.Cir.), *cert. denied,* 506 U.S. 901, 113 S.Ct. 287, 121 L.Ed.2d 213 (1992). If the defense challenges the government's proof, in order to protect the defendant's due process right to be sentenced on the basis of accurate information, the district court must either resolve the controverted matter or not consider the disputed evidence in sentencing the defendant. *United States v. Graham,* 83 F.3d 1466, 1477 (D.C.Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 993, 136 L.Ed.2d 874 (1997) (*citing United States v. Hanono–Surujun,* 914 F.2d 15, 20 (1st Cir. 1990)); FED.R.CRIM.P. 32(c)(1). Thus, as occurred in the instant case, the government must proffer sufficiently reliable evidence to support its factual assertions as to the scope of a defendant's conspiratorial agreement and the quantity of drugs reasonably foreseeable to the defendant. *See United States v. Pinnick,* 47 F.3d 434, 437 (D.C.Cir.1995); *United States v. Coonce,* 961 F.2d 1268, 1279 (7th Cir.1992); *United States v. Lee,* 818 F.2d 1052, 1056–57 (2d Cir.), *cert. denied,* 484 U.S. 956, 108 S.Ct. 350, 98 L.Ed.2d 376 (1987). The proffers must be sufficiently specific and timely to enable the defense to examine and, as appropriate, to challenge the evidence on which the government relies prior to the imposition of a sentence. *See* FED. R.CRIM.P. 32(b)(6)(A) & (c)(3)(A). Once the government follows these procedures, it remains for the defense to proffer evidence of its own, placing factual issues in dispute, or to point out that the government's proffers are deficient or insufficiently comprehensive. Where the defense offers no evidence to refute the factual assertions by the government, the district court may adopt those facts without further inquiry. *See Pinnick,* 47 F.3d at 437 (citing *United States v. Ramirez,* 11 F.3d 10, 14 (1st Cir.1993)); THOMAS W. HUTCHINSON & DAVID YELLEN, FEDERAL SENTENCING LAW AND PRACTICE, 650 (1994).

■ Where this procedure is followed, in the absence of a "clear and specific" challenge by the defense, *Pinnick,* 47 F.3d at 438, the government's timely proffer with specific references to the trial record provides the district court with a sufficient basis on which to impose sentence. *Saro,* 24 F.3d at 291. Absent indications to this court that a sentencing court committed obvious error by relying on findings that are "internally contradictory, wildly implausible, or in direct conflict with evidence presented at trial," *see*

---

**3.** Under U.S.S.G. § 1B1.11(a), resentencing occurs under the version of the Guidelines in effect at the time of resentencing, unless such an application would violate the Ex Post Facto Clause of Article I, Section 9, cl. 3 of the Constitution. *See United States v. Clark,* 8 F.3d 839, 844 (D.C.Cir. 1993).

*id.,* uncontested contentions, as appear in a presentence report, for example, are considered to be supported by indicia of probable reliability and are sufficient to support factual findings for sentencing purposes. *Pinnick,* 47 F.3d at 437; *Coonce,* 961 F.2d at 1279 (citing *United States v. Miller,* 891 F.2d 1265, 1270 (7th Cir.1989)); HUTCHINSON & YELLEN, *supra,* at 650.

Even where the district court makes its own inquiry into the record, the procedure just recited should assist the court in focusing on the relevant contested issues. As this court recently stated in *United States v. Dudley,* 104 F.3d 442, 447 (D.C.Cir.1997), involving another *Anderson* remand, "we intended the district court to make detailed findings with respect to the evidentiary links tying [the defendant and the co-defendants] to the amounts of drugs for which the district court found them responsible." Indeed, this court "encourage[d] the government to submit to the district court (with notice to and service on the defendant) proposed findings that will support the sentence to be imposed." *Id.* Although such findings were not submitted to the district court in the instant case, the government assures the court that it is pursuing the suggestion made in *Dudley.* The submission by the government of proposed findings of fact to the court prior to sentencing should ease the burden on district courts confronted with making individualized sentencing determinations in complex cases with multiple defendants, and on appellate courts upon review.

■ Turning to the instant case, we conclude that notwithstanding the absence of *Dudley*-type findings, because the district court afforded appellant an opportunity to respond to the government's evidentiary proffers and concluded thereafter that the government's representations were supported by the record, there is no basis for reversal and remand. *See United States v. Foster,* 19 F.3d 1452, 1455 (D.C.Cir.1994); *United States v. Spriggs,* 996 F.2d 320, 326 (D.C.Cir.), *cert. denied,* 510 U.S. 938, 114 S.Ct. 359, 126 L.Ed.2d 323 (1993); 18 U.S.C. § 3742(e); FED.R.CRIM.P. 32(c)(3).

■ **Scope of the conspiratorial agreement.** To determine the scope of the conspiratorial agreement entered into by a defendant, the district court must "spell out specific findings about the individual defendants and their relation to the conspiracy...." *Childress,* 58 F.3d at 723. Here, to support its position that the drug transactions involving appellant's two brothers in Annapolis could properly be attributed to him, the government set out the evidence upon which it relied in several sentencing memoranda and at a resentencing hearing before the district court. Specifically, the government relied on numerous tape recordings of telephone conversations to show that more than five and three-eighths kilograms of cocaine were properly attributable to appellant for his participation in distributing drugs in Annapolis prior to his incarceration in December 1988.

In a memorandum in aid of resentencing, the government referenced trial evidence that showed that the three Booze brothers, working with others, purchased multiple kilograms of cocaine from Anderson for distribution in Annapolis. The memorandum included references to specific wiretapped conversations in which the Booze brothers arranged prices, quantities, and pick-up points for cocaine transactions. For example, with regard to a transaction that was negotiated and completed on November 12–14, 1988, the government relied on over a dozen taped conversations to show that the three brothers negotiated the sale of a kilogram of cocaine with Anderson, and that they arranged to pick up the cocaine. Wiretapped conversations also revealed that on multiple occasions the three Booze brothers took part in transactions involving varying amounts of cocaine, including half and full kilograms, and that they received extensions of credit from Anderson. Further, the memorandum referenced a wiretapped conversation in which Anderson said that he had done business with the Boozes over a period of years and that he had forged a relationship of trust with them. Finally, the memorandum pointed to trial testimony that, in addition to participating in drug transactions with his brothers, appellant had served as an "enforcer" to protect Anderson's drug distribution operation, had

bailed one of Anderson's employees out of jail, and had assisted Anderson in locating persons who owed him money and in obtaining a firearm. Based on the foregoing, the memorandum concluded that the Booze brothers had agreed to participate in conspiratorial activities involving "at least" eight and one-half kilograms of cocaine.

A supplemental presentence report by the probation office stated that appellant and his brothers purchased one-half to one kilogram from Anderson "every three or four days," and that, "[b]ased on the evidence, [appellant] jointly undertook the sale of at least 5 kilograms of cocaine." The report recommended that appellant be sentenced for conspiracy to distribute and to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), & 846, receiving a penalty of ten years to life imprisonment and a five year term of supervised release.

In response, appellant acknowledged in a presentence memorandum that the government had provided him with 121 transcripts of wiretapped telephone conversations that had been admitted into evidence at trial. Appellant contended, however, that the evidence showed that only three and three-fourths kilograms of cocaine could properly be attributed to him. He asserted, without record references, that although "[t]he Booze conspiracy ... gradually worked up to getting ½ to 1 kilogram of cocaine almost weekly," during the period prior to his incarceration, the conspiracy was limited to smaller transactions involving ounces rather than kilograms of cocaine.

■ At the sentencing hearing, the government designated by date and number the tape recordings it relied upon to show that appellant, prior to his incarceration in December 1988, participated in numerous cocaine transactions in Annapolis that involved his brothers. Because appellant failed to dispute the representations in the government's sentencing memorandum and in the presentence report that the scope of his conspiratorial agreement included all transactions carried out by his brothers in Annapolis prior to his incarceration, the district court could properly view appellant's responsibility as coextensive with that of his brothers for that period. *See Pinnick,* 47 F.3d at 437; *Saro,* 24 F.3d at 291. While appellant's sentencing memorandum challenged the total amount of cocaine attributed to him, it acknowledged the existence of "[t]he Booze conspiracy" and "[t]he Booze group" and that he "was found to be [a] member" of this subsection of the larger Anderson conspiracy. Statements in appellant's brief on appeal are also consistent with the district court's conclusion on the scope of his agreement: appellant acknowledges that he introduced his brothers to Anderson, assisted Anderson in operating his drug distribution network, and participated in numerous drug transactions involving Anderson and his brothers. Hence, there is nothing contradictory or implausible in the district court's conclusion that the scope of appellant's conspiratorial agreement involved the transactions conducted by the three Booze brothers in Annapolis during the period prior to his incarceration.

**Quantity of drugs reasonably foreseeable to Booze.** As to appellant's contention that the district court erred in accepting the government's calculation that five and three-eighths kilograms of cocaine could be attributed to transactions within the scope of his conspiratorial agreement, we find no basis for a remand.

At the resentencing hearing, the government took the position that because appellant was no longer active in the conspiracy after his incarceration on December 15, 1988, the total amount of cocaine attributable to appellant was five and three-eighths kilograms, rather than the eight and a half kilograms that the presentence report had linked to the Booze brothers' conspiracy over its entire duration. Because a difference of any amount greater than three-eighths of a kilogram would have placed appellant below the five kilogram threshold, reducing the low end of his sentencing range by three and a half years under U.S.S.G. § 2D1.1(c),[4] *see Gra-*

4. U.S.S.G. § 2D1.1(c)(5) provides a base offense level of 30 for transactions involving between three and a half and five kilograms of cocaine, and § 2D1.1(c)(4) provides a base offense level of 32 for transactions involving between five and fifteen kilograms of cocaine. For defendants,

*ham,* 83 F.3d at 1477, this three-eighths of a kilogram was the focus of appellant's argument at resentencing.

The government reviewed for the district court the evidentiary basis for the five and three-eighths kilograms of cocaine that it contended was within the scope of appellant's conspiratorial agreement. Identifying the dates of the tape recordings introduced at trial to prove each of the transactions involving the Booze brothers prior to appellant's incarceration and the amounts they entailed, the government adequately supported its position. Generally indicating who initiated each transaction, the amounts of drugs and money involved, the date and time of day when the transaction occurred, and where the deliveries were made, the government reached its total by aggregating amounts ranging from one-eighth to one and one-fourth kilograms associated with nine separate transactions that took place between October and December 1988.

 As with alleged inaccuracies in a presentence report, if the evidence relied on by the government at the sentencing hearing was erroneous or incomplete, the burden fell on appellant to come forward with a showing that the government's reliance was misplaced. *See Pinnick,* 47 F.3d at 438; *cf. Coonce,* 961 F.2d at 1279–80 (citing WAYNE R. LAFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURE § 25.1(d), at 929 (1985)). Rather than disputing appellant's involvement in any of the transactions cited or challenging the drug amounts claimed by the government, however, defense counsel responded to the government's proffer by arguing that appellant was entitled to a downward departure based on acceptance of responsibility. Although defense counsel had earlier advised the district court that appellant was responsible for less than five kilograms based on counsel's own calculations, counsel never of-

fered any record support for this lower figure. Counsel explained only that by being "a little creative" he had calculated the attributable quantity to be under five kilograms, asserting that the difference between his figure and the government's was due to indications that one of appellant's brothers skimmed small amounts of cocaine for himself from transactions negotiated by the brothers. No record evidence was cited in support of this assertion, however. Moreover, rather than pressing his point, counsel proceeded to state that, having heard the trial testimony, "the [c]ourt [was] in a much better position to make a determination" concerning the attributable quantity than was defense counsel. Although appellant spoke himself, he also did not dispute the specific drug quantities and transactions relied on by the government, arguing instead that he should not be held accountable for drug amounts that he had not personally handled, a position that, as the district court pointed out, reflected a lack of familiarity with the principles of conspiracy law.

 Absent specific challenges by appellant, the district court was entitled to rely on the trial record references cited by the government as the basis for its own factual findings.[5] *See United States v. Goodwin,* 72 F.3d 88, 90 (8th Cir.1995); *United States v. Zarnes,* 33 F.3d 1454, 1475 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2286, 132 L.Ed.2d 288 (1995). While a memorandum or a more extensive statement by the district court of its findings would have facilitated review and helped "to avoid needless misinterpretation" on appeal, *Dudley,* 104 F.3d at 447, the government's recitation of the relevant trial evidence provided an adequate substitute to support the court's findings that appellant should be held accountable for his brothers' participation in the Anderson conspiracy and for a total drug

like appellant, with a Criminal History category of 6, the Sentencing Table at U.S.S.G. § 5, Part A, provides that the penalties for a level 30 offense are 168–210 months imprisonment and the penalties for a level 32 offense are 210–62 months imprisonment.

**5.** This is so notwithstanding the government's concession in its brief on appeal that the record concerning the November 2, 1988, transaction,

involving one-fourth of a kilogram, was "not as clear as it might have been" because, at the resentencing hearing, the government mistakenly described that transaction as having taken place on October 28, 1988. When this quantity is omitted from consideration, the total quantity attributable to appellant still exceeds five kilograms.

quantity of five and three-eighths kilograms. Because the government proffered trial evidence to support a quantity of drugs in excess of five kilograms and appellant failed to identify specific deficiencies in that evidence, the district court's reliance on that evidence was proper; therefore, there is no basis to remand for resentencing.

Accordingly, because appellant's other contentions are meritless,[6] we affirm.

---

**6.** Because the record showed that appellant was involved in numerous drug transactions as part of the Booze conspiracy before his incarceration, and that he had performed a variety of tasks for Anderson, we find no error in the district court's determination that appellant was not a "minor participant in any criminal activity" so as to merit a two-point downward departure under U.S.S.G. § 3B1.2. *See United States v. Olibrices,* 979 F.2d 1557, 1559–61 (D.C.Cir.1992). Similarly, we find no abuse of discretion by the district court in denying appellant a two-point downward departure for acceptance of responsibility under U.S.S.G. § 3E1.1(a). While appellant maintains that the district court's decision was improperly predicated on his refusal to surrender his right to appeal his sentence, the record shows that the district court stated that the basis for its decision was that appellant was "not willing to accept responsibility for the crimes for which he was found guilty by the jury."