Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued September 19, 2003      Decided October 24, 2003

No. 02-3085

UNITED STATES OF AMERICA,
APPELLEE

v.

STEVEN M. BOLLA,
APPELLANT

————

Appeal from the United States District Court
for the District of Columbia
(No. 02cr00196–01)

————

*Amy B. Jackson* argued the cause for appellant.  With her on the briefs were *Robert P. Trout* and *John M. Fedders*.

*David B. Goodhand*, Assistant U.S. Attorney, argued the cause for appellee.  On the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, and *John R. Fisher*, *Roy W. McLeese III*, *Craig S. Iscoe*, and *Patricia A. Heffernan*, Assistant U.S. Attorneys.

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before:  ROGERS and ROBERTS, *Circuit Judges,* and
SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* ROBERTS.

ROBERTS, *Circuit Judge*:  Under the Sentencing Guidelines, punishment for certain economic crimes depends in part on the value of the accompanying loss.  Appellant Stephen M. Bolla disputes the district court's computation of the loss associated with his filing a false Statement of Financial Condition in connection with a Securities and Exchange Commission (SEC) civil action.  Concluding that Bolla lied on his financial statement to evade the maximum penalty possible in the SEC action, the district court found an intended loss of $90,000, and enhanced Bolla's sentence accordingly.  Bolla argues that the district court did not have an adequate basis for concluding that he intended such a loss, and should have relied on actual loss instead — alleged to be a lower amount yielding less of an enhancement.  We conclude that Bolla failed to preserve below the objection to the use of intended loss that he now seeks to present, and hold that the district court's use of intended loss was not plain error.  We accordingly affirm the judgment.

## I.  Background

In the fall of 1999, Bolla was under investigation by the SEC for violating federal securities laws in connection with his role as an investment adviser at Trustcap Financial (Trustcap).  He submitted a sworn financial statement dated November 5, 1999 to the SEC, purporting to reflect his financial condition as of October 1, 1999.  Bolla filed this statement in anticipation of a settlement agreement with the SEC.

The financial statement required Bolla to disclose, *inter alia*, the following: (1) all assets that he owned, possessed, or controlled, regardless of whether legal title was held by an intermediary; (2) all money transfers of $1000 or more in the last five years; (3) all money or other income earned on a monthly basis; and (4) all securities or commodities accounts he controlled or in which he had a beneficial interest.  Bolla completed the financial statement and, as required, acknowledged that any material misstatements or omissions would be punishable under 18 U.S.C. § 1001.  That provision makes it

a crime, in connection with any matter within the jurisdiction of the Federal Government, to "knowingly and willfully . . . make[ ] any materially false, fictitious, or fraudulent statement or representation." 18 U.S.C. § 1001(a)(2). On the financial statement, Bolla listed $21,345 in cash and $8000 worth of furniture and household goods. He failed, however, to disclose $941,228 in cash and securities that he had placed in his wife's brokerage account, which he controlled through a general power of attorney. He also failed to disclose the full amount of his monthly gross income, numerous cash transfers, other accounts that he controlled at various financial institutions, and the power of attorney he held with respect to his wife's brokerage account.

On February 5, 2000, Bolla submitted a sworn declaration, under penalty of perjury, in support of his financial statement. The declaration confirmed that the financial statement accurately reflected his financial condition as of October 1, 1999.

On May 30, 2000, the SEC filed its anticipated complaint against Bolla in the United States District Court for the District of Columbia, alleging that he had violated federal securities laws in connection with his job at Trustcap. Bolla and the SEC entered into a settlement agreement to resolve the civil complaint. The allegations in the complaint carried a maximum penalty of $100,000 per violation. Based on his sworn financial statement, however, the SEC determined that Bolla had a negative net worth and sought a penalty of only $10,000. The district court, although troubled by the low amount of the penalty, accepted the settlement agreement after the SEC explained that Bolla's financial statement showed an inability to pay a higher amount.

Bolla subsequently pled guilty to the charge of making a materially false, fictitious, or fraudulent statement to the SEC by filing the false financial statement in violation of 18 U.S.C. § 1001. The district court sentenced Bolla pursuant to U.S.S.G. § 2F1.1.[1] Under that Guideline, the district court

---

[1] The district court originally sentenced Bolla under U.S.S.G. § 2B1.1 of the November 1, 2002 Sentencing Guidelines, which was

must calculate the amount of loss involved to determine the proper sentence. The Application Notes to the Guideline explain that "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." U.S.S.G. § 2F1.1 application note 8. The district court found that Bolla hid his assets to evade the maximum possible fine he faced in the SEC proceeding — $100,000. The court determined the intended loss to be $90,000 — the $100,000 Bolla sought to evade, less the $10,000 penalty he paid. Based on this loss amount, the district court sentenced Bolla to twelve months in prison,[2] and ordered him to pay a $20,000 fine and to make restitution to the SEC in the amount of $90,000. Bolla appeals the sentence.

## II. Analysis

### A. Intended Loss

Bolla argues that the government failed to prove the amount of intended loss by a preponderance of the evidence, and that the district court should have used an actual loss figure, because the intended loss could not be determined.

---

in effect as of the date of sentencing. U.S.S.G. § 1B1.11(a) requires courts to apply the Guidelines in effect at the time of sentencing. Under U.S.S.G. § 1B1.11(b)(1), however, courts must apply the Guidelines in effect on the date the offense was committed if using the Guidelines in effect at the time of sentencing would yield a longer sentence. U.S.S.G. § 2B1.1 yielded an offense enhancement of eight. The Guideline in effect at the time of Bolla's offense, U.S.S.G. § 2F1.1(b), established an offense enhancement of six. Thus, the Guideline used in the sentencing hearing produced a longer sentence than the one in effect at the time of the offense. The district court, therefore, conducted a second sentencing hearing and properly applied U.S.S.G. § 2F1.1.

[2] The loss amount of $90,000 yielded an offense enhancement of six, which (combined with the base offense level of six and a two point downward adjustment for acceptance of responsibility) provided an adjusted offense level of ten. An adjusted offense level of ten corresponds to a six to twelve month sentence for a Category I (first time) offender. *See* U.S.S.G. Sentencing Table.

He contends that there was no evidence before the court that he intended any particular loss — that "the government has failed to come forward with any evidence of what Bolla actually had in mind," Reply Br. at 11 — and that the court erred in filling that gap by inferring that he intended to avoid the maximum penalty to which he was subject.

Bolla did not raise this objection below. *See* Fed. R. Crim. P. 51. The sentencing transcript shows that Bolla's counsel primarily challenged the appropriate calculation of an actual loss figure and never advanced the argument that the evidence failed to support the court's finding that he intended to avoid the maximum possible penalty of $100,000. This despite the fact that the government's sentencing memorandum proposed using that figure, and the district court began the sentencing hearing with the following:

> It is my conclusion that the defendant intended to conceal as much of his net worth as possible as might be [vulnerable] to the maximum penalty that the SEC could levy and that sum was $100,000. So, that is the loss figure that I am tentatively prepared to utilize unless either of you have authority which tells me that I must utilize some other figure.

Sentencing Tr. at 2–3. Counsel responded with an analysis of the calculation of actual loss, but never objected to the district court's theory of intended loss. *See id.* at 3–9. In fact, counsel stated later in the hearing, "I did not address the intended loss. . . . How can intended loss be different than actual loss? You can't intend something that is not actually going to happen . . . ." *Id.* at 12. The district court replied "[c]ertainly you can," and counsel responded "I defer to Your Honor's judgment in that then." *Id.* at 12–13; *see United States v. Studevent*, 116 F.3d 1559, 1563 (D.C. Cir. 1997) (explaining that intended loss is not "limited to an amount that was possible or likely").

Counsel then stated:

> [O]ne of the things that has been scoffed at in this case is what was his intention. The government has never

> asked him that through the year and a half of investigation. Mr. Bolla, and while it is scoffed at, says that he never focused on what the fine was going to be, he was so overburden[ed] with the process. And if that is his burden because of recklessness then that would be Your Honor's finding.

Sentencing Tr. at 13. Nothing in this statement can be read as an objection preserving the argument raised on appeal — that the district court may not infer from a defendant's concealment of large amounts of assets an intent to avoid the maximum penalty to which he is subject. "An objection is not properly raised if it is couched in terms too general to have alerted the trial court to the substance of the [appellant's] point." *United States v. Breedlove*, 204 F.3d 267, 270 (D.C. Cir. 2000).

Bolla's claim may therefore be considered only under a plain error standard of review. *See* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); *Breedlove*, 204 F.3d at 271. The Supreme Court recently confirmed that " '[u]nder that test, before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights.' " *United States v. Cotton*, 535 U.S. 625, 631 (2002) (quoting *Johnson v. United States*, 520 U.S. 461, 466–67 (1997); citation and other internal quotation marks omitted). " 'If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.' " *Id.* at 631–32 (same; alteration in original). In this case, it is only necessary to address whether the alleged error was "plain."

That question "is assessed from the perspective of the trial court." *United States v. Saro*, 24 F.3d 283, 286 (D.C. Cir. 1994). Although our application of plain error review in the sentencing context allows a somewhat relaxed standard for showing prejudice under the third prong of the plain error test, *see id.* at 288 ("[T]he burden of persuasion in showing 'prejudice' should be somewhat lighter in the sentencing

context."), Bolla must still satisfy a difficult standard in order to show that the alleged error was "plain" or "obvious." He must show the error to be "so 'plain' the trial judge and prosecutor were derelict in countenancing it." *Id.* at 286 (quoting *United States v. Frady*, 456 U.S. 152, 163 (1982)) (internal quotation marks omitted); *see United States v. Weaver*, 281 F.3d 228, 232 (D.C. Cir. 2002) ("Plain error assumes that the court should have intervened *sua sponte* because the error was so obvious.").

The alleged error in this case was the district court's finding of intended loss, based on the inference that Bolla concealed his assets with the intent to avoid the maximum possible penalty. The district court was certainly not "derelict" in inferring that Bolla concealed assets to avoid a penalty, and thereby inflict loss on the government. Intent to inflict loss may be inferred from the concealment of large amounts of assets. *See United States v. Feldman*, 338 F.3d 212, 223–24 (3d Cir. 2003); *see also United States v. Schaffer*, 183 F.3d 833, 843 (D.C. Cir. 1999) (jury may infer intent based upon circumstances surrounding a defendant's actions). Here, the plea agreement and the government's proffer of evidence reveal that Bolla failed to disclose (1) the $941,228 transferred to his wife's brokerage account, which he controlled, (2) more than 100 bank transfers of $1000 or more, (3) six bank transfers of more than $75,000, (4) gross income of approximately $104,500 per month, by understating his monthly income as " 'various' commissions totaling $11,045 per month," (5) control over a checking account, and (6) the power of attorney over his wife's brokerage account. Statement of the Offense at 2–3. In accordance with his plea agreement, Bolla affirmed the veracity of all facts in the Statement of the Offense. "Absent indications . . . that a sentencing court committed obvious error by relying on findings that are 'internally contradictory, wildly implausible, or in direct conflict with evidence presented at trial,' uncontested contentions . . . are considered to be supported by indicia of probable reliability and are sufficient to support factual findings for sentencing purposes." *United States v. Booze*, 108 F.3d 378, 381–82 (D.C. Cir. 1997) (quoting *Saro*, 24 F.3d at 291).

The only evidence contrary to the district court's finding of intent was Bolla's own explanation. Bolla's counsel explained that Bolla "was not focused on the fine," but filed the false financial statement out of frustration with the length of the SEC investigation, dissatisfaction with "being given limited counsel by a junior associate," and "his own sloth and anger." Letter from John Fedders to George Neal, Jr., Aug. 5, 2002, quoted in Gov't Sentencing Mem. at 8. It is unclear how lying about assets responds to any of these sources of frustration, but the district court was plainly entitled to dismiss Bolla's explanation. In *United States v. Feldman*, one of our sister circuits refused to credit the appellant's explanation for hiding assets in a bankruptcy proceeding. 338 F.3d at 223. The court explained that "it is appropriate for the [d]istrict [c]ourt to consider the reason why most people would conceal assets," concluding that "it is simply unbelievable that [the appellant] would hide over a million dollars in assets only to achieve a faster discharge." *Id.* The district court, in the instant case, was not required to credit Bolla's self-serving explanation of his motives.

Nor was the district court "derelict" in relying on the maximum penalty Bolla faced in determining the amount of the loss intended. There is certainly nothing "wildly implausible" in inferring that a defendant who conceals assets in the face of a penalty proceeding does so to avoid the penalty to which he is subject — and as much of it as possible. *Booze*, 108 F.3d at 381–82. Bolla's claim that "he was not focused on the fine" makes it difficult for him to suggest that he only intended to avoid some lesser amount, which he expected the SEC to impose. The Third Circuit recently upheld much the same approach in the bankruptcy context in *Feldman*. We need not decide if this approach is correct; we need only conclude, as we do, that the district court was plainly not "derelict in countenancing it." *Saro*, 24 F.3d at 286.

### B. Restitution

Bolla states that "[t]he flawed calculation also affected the calculation of the restitution." Appellant's Br. at 16 n.7. The only other reference to this argument appears in the final

sentence of his brief: "The restitution amount, which was based upon the amount of the loss, should be appropriately adjusted." *Id.* at 22. These two sentences provide no additional basis for attributing error to the district court's determination of the amount of restitution, and accordingly we reject Bolla's challenge to that determination.

## III. Conclusion

For the foregoing reasons, the judgment is affirmed.